IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RYAN, LLC f/k/a RYAN & COMPANY, INC., | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:12-cv-02391-O |
| INSPIRED DEVELOPMENT, LLC and DONALD W. SLOAN, | § § § § | |
| Defendants. | § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are: Defendants' Motion to Dismiss Fifth Amended Complaint, filed August 21, 2013 (ECF No. 80); Plaintiff's Motion to Dismiss Counterclaims, filed September 11, 2013 (ECF No. 85); Defendant Lisa K. Sloan's Motion to Dismiss Fifth Amended Complaint, filed September 30, 2013 (ECF No. 87); and Defendant Lisa K. Sloan's Motion for Protective Order, filed November 11, 2013 (ECF No. 98).

Having considered the motions, responses, replies, pleadings, record and applicable law, and for the reasons stated below, the Court denies Defendants' Motion to Dismiss Fifth Amended Complaint (ECF No. 80); grants Plaintiff's Motion to Dismiss Counterclaims (ECF No. 85); grants Defendant Lisa K. Sloan's Motion to Dismiss Fifth Amended Complaint (ECF No. 87); and denies as moot Defendant Lisa K. Sloan's Motion for Protective Order (ECF No. 98).

## I. Factual and Procedural Background

The following facts are drawn from Plaintiff Ryan's Fifth Amended Complaint and Application for Temporary and Permanent Injunctive Relief (ECF No. 70).[1]

### A.     The Parties

Ryan, LLC, f/k/a Ryan & Co., Inc. ("Plaintiff" or "Ryan") is a leading global tax services firm headquartered in Dallas, Texas.  5th Am. Compl. ¶ 9, ECF No. 70.  Ryan provides "state, local, federal, and international tax advisory and consulting services to clients throughout the United States."  *Id.*  Defendant Inspired Development, LLC ("Inspired") is an Illinois limited liability company composed of two members—Donald W. Sloan ("D. Sloan") and Lisa K. Sloan ("L. Sloan").  *Id.* ¶ 3.[2]  Inspired "provides tax incentive, sales order approval, sales support, and administrative services to retailers" doing business in several states, including Illinois and Texas. *Id.* ¶ 10.  Under Illinois law, sales taxes are assessed by municipalities in the location where a purchase order is accepted, rather than where the customer receives the purchased product.  *Id.* Inspired has entered into sales tax incentive agreements with the cities of Kanakee, Illinois and Channahon, Illinois, pursuant to which the cities share a portion of their sales tax receipts with Inspired.  *Id.*  In turn, Inspired's retailer clients have opened sales-processing offices in these towns, and Inspired shares its sales tax rebates with those clients.  *Id.*

---

[1]  In reviewing a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).

[2] On October 31, 2013, counsel for D. Sloan and Inspired notified the Court of Defendant D. Sloan's death.  *See* Suggestion of Death (ECF No. 96).

B.      *The Marketing Agreement*

On or about March 1, 2001, Ryan and Inspired entered into a Marketing Agreement, pursuant to which Ryan agreed to refer its clients to Inspired for assistance in obtaining tax incentives from the municipalities with which Inspired had contracted.  *Id.* ¶ 11 and Ex. A thereto (Marketing Agreement, ECF No. 70-1).  L. Sloan signed the Marketing Agreement as Managing Member of Inspired.  Marketing Agreement at 7.  Under the Marketing Agreement, Ryan and Inspired agreed "to mutually work to develop the solicitation of municipalities and companies for the purpose of placing companies within municipalities that are willing to provide a sales tax rebate program for such companies locating within that municipality and generating sales that are taxable within that municipality."  Marketing Agreement, Sec. 1.  Inspired agreed to enter into separate contracts with Ryan's clients and provide services and support to those clients.  *Id.*, Sec. 2.  Inspired also agreed to enter into contracts with municipalities, collect tax rebates, and distribute those funds pursuant to the agreements with the clients and the Marketing Agreement.  *Id.*

As contemplated by the Marketing Agreement, Inspired entered into separate agency agreements with Ryan's clients that Ryan referred to Inspired. 5th Am. Compl. ¶ 15.  Under the Marketing Agreement, Inspired agreed to pay Ryan 40% of the amounts remaining after Inspired paid any Illinois municipality tax rebate amounts to Ryan's clients pursuant to Inspired's agreements with those clients.  5th Am. Compl. ¶ 13; Marketing Agreement, Sec. 3.  Inspired agreed to make the payments required under the Marketing Agreement within thirty days of receiving the funds from the municipality, along with an accounting of the fees collected and the amounts distributed to the clients. 5th Am. Compl. ¶ 13; Marketing Agreement, Sec. 3.  The Marketing Agreement gave Ryan

3

the right to audit Inspired's records related to the Marketing Agreement's program.  5th Am. Compl. ¶ 14; Marketing Agreement, Sec. 15.

On June 26, 2012, Ryan received a call from one of its Texas clients, who advised Ryan that during a telephone call on that day, Inspired's principal D. Sloan had responded to the client's inquiry about missing payments by telling the client that Ryan had the money owed to the client. 5th Am. Compl. ¶ 16.  The information D. Sloan communicated to the client on behalf of Inspired was "completely false."  *Id.*  Ryan alleges that at the time D. Sloan made the statement, "L. Sloan was CEO of Inspired and had ultimate responsibility to supervise Inspired representatives." *Id.* ¶ 7.

On July 3, 2012, Ryan's counsel sent a letter to Inspired "to notify Inspired of several material breaches of the Agreement, to demand that Inspired immediately cure such breaches, and to demand that Inspired allow Ryan immediately to audit its books and records."  *Id.* ¶ 18.  In subsequent communications between Ryan and Inspired, D. Sloan "would not agree to provide proof that Inspired was still holding the money that it was required to pay to Ryan and its clients under the Marketing Agreement and Inspired's separate contracts with Ryan's clients."  *Id.* ¶ 19.  "Nor did D. Sloan, on behalf of Inspired, agree to pay Ryan and its clients the money that Inspired owed them, either immediately or at any time in the future[,]" all in breach of the Marketing Agreement.  *Id.* Ryan estimates that Inspired owes its clients "well over $10 million in rebate payments," and that Inspired owes Ryan "over $500,000."  *Id.* ¶ 17.

C.     *Ryan Files Lawsuit Against Inspired*

Ryan filed this lawsuit against Inspired on July 17, 2012, asserting claims for breach of the Marketing Agreement, money had and received, defamation, violation of the Texas Theft Liability Act ("TTLA'), equitable claims—including unjust enrichment, restitution, disgorgement, imposition

4

of a constructive trust, and accounting—and seeking recovery of attorney's fees. *See* Original

Compl. ¶¶ 16–33, ECF No. 1.  Ryan sought a temporary restraining order, which the Court denied.

*See* Minute Entry, July 27, 2012, ECF No. 13.  Following entry of a scheduling order, on July 31,

2012, Ryan filed a motion for expedited discovery, seeking to determine whether Inspired had the

disputed funds available and whether Inspired was able to pay a monetary judgment.  Following a

Court-ordered conference, Ryan agreed to forego the requests set forth in its motion for expedited

discovery in exchange for Inspired's agreement to produce, by noon on August 8, 2012,

"documentary evidence . . . that funds received by Inspired from Illinois municipalities pursuant to

the tax rebate agreements that are described in this lawsuit are on deposit and/or are accessible to

Inspired, and have not been dissipated." *See* Joint Status Report 2, ECF No. 23.  Inspired produced

a document indicating that a company named Companhia Brasileira de Energia Limpia -

Macroenergia S/A had received $20 million as a "finance loan" from D. Sloan.  5th Am. Compl.

¶ 21and Ex. C thereto (receipt of $20 million by Companhia Brasileira, ECF 70-1).

> D.    *Amendment to Marketing Agreement and Contingent Settlement Agreement*

Section Two of the Marketing Agreement provided that "[i]n the event Inspired fails to

provide such facilities or perform services as required [by the Marketing Agreement], as determined

appropriate by Ryan, Ryan shall, after providing Inspired with notice as required [by the Marketing

Agreement] and subject to a sixty (60) day cure period, have the option of providing such facilities

and services." 5th Am. Compl. and Ex. A thereto (Marketing Agreement).  If Ryan exercised this

option, Inspired agreed "to reimburse Ryan its actual costs incurred in providing such facilities and

services, such reimbursement to be provided immediately upon request by Ryan." *See id.*

On October 4, 2012, pursuant to Section 2 of the Marketing Agreement, and after the 60-day notice and cure period, Inspired and Ryan executed an Amendment to the Marketing Agreement in which Ryan exercised its option to provide the Marketing Agreement services to the clients Ryan referred to Inspired.   5th Am. Compl. ¶ 12, and Ex. B thereto (Amendment Number One to Marketing Agreement, ECF No. 70-1).   Amendment Number One, in addition to terminating Inspired's services under Section 2 of the Marketing Agreement, also deleted Section 6, which had provided that the parties "will not engage in any business that competes with [the Marketing Agreement] services[.]" Amendment Number One at 1-2, Secs. 1, 3.   The parties agreed that Amendment Number One "was to modify, and is hereby incorporated into" the Marketing Agreement.  *See id.* at 1.

Also on October 4, 2012, Defendants D. Sloan and Inspired, "under the supervision of Inspired's CEO L. Sloan," signed a conditional Settlement Agreement contingent on Inspired funding a custodial account by November 15, 2012, to repay money owed to Ryan and Ryan's clients.   5th Am. Compl. ¶¶ 7, 23.   After two extensions of time to fund the account and several continuances of the scheduling order deadlines, Inspired failed to fund the custodial account despite Defendants' assurances that they would return the funds from the Brazilian investment and were merely awaiting regulatory approval.  *Id.*   On January 28, 2013, the Court permitted Ryan to file its Fourth Amended Complaint to add D. Sloan as an additional defendant in this case in light of D. Sloan's failure to fund the custodial account in breach of the settlement agreement.  *See* Order, ECF No. 49.

E.      *Ryan's Fourth Amended Complaint & Motion for Leave to Amend*

In its Fourth Amended Complaint, Ryan asserted the following causes of action: (1) breach of contract for (a) the Marketing Agreement and (b) the Settlement Agreement; (2) money had and received; (3) defamation; (4) violation of the TTLA; (5) equitable claims, including unjust enrichment, restitution, disgorgement, imposition of a constructive trust, and accounting; (6) tortious interference with existing contracts; (7) tortious interference with prospective contracts; (8) negligent misrepresentation; (9) fraud; and (10) attorney's fees.  Defendants moved to dismiss the Fourth Amended Complaint.  While the motion was pending, Ryan sought leave to amend the pleadings to add L. Sloan as an additional defendant, and add new allegations against all Defendants.  *See* Pl. Mot. for Leave to File Fifth Am. Compl., ECF No. 67.

F.      *The Court's July 18, 2013 Order*

The Court granted Inspired's and D. Sloan's respective motions to dismiss Ryan's claims for tortious interference with existing contracts (count six), tortious interference with prospective contracts (count seven), negligent misrepresentation (count eight), and fraud (count nine), finding the fraud allegations insufficient under Fed. R. Civ. P. 9(b).  *See* July 18, 2013 Order at 8-24, ECF No. 69.  Further, the Court found that Ryan lacked standing to assert claims or seek damages on behalf of its clients under their separate agency agreements with Inspired.  *See id.* at 26.  The Court determined that Ryan has sufficiently pleaded the following causes of action against Inspired and D. Sloan: (1) breach of contract[3]; (2) money had and received; (3) defamation; (4) violation of the

---

[3]The Court granted D. Sloan's motion to dismiss the breach of Marketing Agreement claim, finding that Ryan failed to allege sufficient facts to pierce the corporate veil and hold D. Sloan liable for contractual obligations of Inspired LLC.  With regard to breach of the Settlement Agreement, however, noting that D. Sloan entered into the Settlement Agreement in his individual capacity and allegedly failed to comply with the terms of the Settlement Agreement, the Court denied D. Sloan's motion since Ryan was not seeking to hold D. Sloan liable for the obligations of Inspired LLC under the Settlement Agreement, but for his own contractual obligations.  *See* July 18, 2013 Order at 21-23, ECF No. 69.

TTLA; (5) equitable claims, including unjust enrichment, restitution, disgorgement, imposition of a constructive trust, and accounting, and (6) attorney's fees. *See id.* at 8-24.

In the same Order, the Court granted in part Ryan's motion for leave to file Fifth Amended Complaint. *See id.* at 26-28. Ryan had alleged that recent developments and filings by L. Sloan in the divorce action between D. Sloan and L. Sloan made it unlikely that Inspired would fund the settlement, as D. Sloan and L. Sloan had "acted in concert to embezzle funds and convert funds owing to Ryan." *See* Pl. Mot. for Leave to File 5th Am. Compl. at 2, ECF No. 67 (citing *Lisa Sloan v. Donald Sloan, et al.*, No. 11 D 11864 (Cook County Cir. Ct. County Dept. Domestic Relations Div.)) (the "Divorce Action"). Recognizing that Ryan only became aware of the facts supporting its claims against L. Sloan after the deadline to amend pleadings had expired, the Court found good cause, and allowed Ryan leave to add L. Sloan as a defendant, and also allowed Ryan leave to add claims for (1) negligence, negligence per se, and gross negligence, (2) conversion, and (3) conspiracy. *See* July 18, 2013 Order at 26-28. Finding other proposed amendments futile as they would not cure the pleading deficiencies in the Fourth Amended Complaint, the Court denied the remainder of Ryan's motion for leave to amend:

> However, consistent with this Court's rulings on Defendants' motions to dismiss the Fourth Amended Complaint, Plaintiff Ryan, LLC may **not** assert the following causes of action against Defendant Inspired Development, LLC or Defendant Donald W. Sloan: (1) tortious interference with existing contracts, (2) tortious interference with prospective contracts, (3) negligent misrepresentation, or (4) fraud. Additionally, it may **not** assert the following cause of action against Defendant Donald W. Sloan: (1) breach of the Marketing Agreement.[4]

---

[4]The Court held that the amended pleading, "does not cure the pleading deficiencies identified in the Fourth Amended Complaint with respect to piercing the LLC veil on its claim for breach of the Marketing Agreement against Sloan. Accordingly, the Court finds that it would be futile to allow Ryan to file its Proposed Fifth Amended Complaint with respect to this cause of action against Sloan." *See* July 18, 2013 Order at 28, ECF No. 69.

*Id.* at 29 (original emphasis).

G.     *Ryan's Fifth Amended Complaint*

In the live pleading, in addition to the allegations previously summarized, Ryan has added

L. Sloan as a defendant, added allegations stemming from recent developments in the Divorce

Action which Ryan alleges show that Defendants acted in concert to embezzle and convert funds

owed to Ryan, deleted causes of action the Court had previously dismissed, and added new

negligence-based causes of action.  With regard to the Divorce Action and the addition of L. Sloan

as a party-Defendant, citing to Exhibits it attaches to the Fifth Amended Complaint, Ryan alleges

that:

> [In the Divorce Action], L. Sloan recently moved for a Temporary Restraining Order
> seeking broad injunctive relief against Inspired and D. Sloan.  In the Petition for
> Dissolution of Marriage (attached as Exhibit D) and Motion for Temporary
> Restraining Order (attached as Exhibit E) and supporting affidavit, L. Sloan swears
> that, at least from 2010 forward and while she was CEO of Inspired, D. Sloan
> consistently used money from Inspired accounts on personal purchases of a Porsche,
> expensive jewelry, houses and "paramours, gambling, investments in night clubs,
> movies, movie stars, and cars."  She attaches documents evidencing payment for a
> Porsche by D. Sloan with the signature of Efina Levac, an alleged paramour/exotic
> dancer.  During this time, L. Sloan continued to accept payments from D. Sloan from
> the Inspired accounts belonging to Ryan and its clients.  Only when D. Sloan no
> longer could access Inspired accounts and pay L. Sloan, did she move for injunctive
> relief in the Divorce Action, for the first time complaining about D. Sloan's actions.

5th. Am. Compl. ¶ 24 and Ex. D (Petition for Dissolution of Marriage), Ex. E (Emergency Motion

for Temporary Restraining Order and Temporary Relief).

Ryan asserts the following causes of action against Inspired, D. Sloan and L. Sloan: breach

of contract (Count 1); money had and received (Count 2); defamation (Count 3); violation of the

TTLA (Count 4); equitable claims, including unjust enrichment, restitution, disgorgement,

9

imposition of a constructive trust, and accounting (Count 5); negligence, negligence per se, and gross negligence (Count 6); conversion (Count 7); conspiracy (Count 8); and a request for attorney's fees (Count 9).

Defendants Inspired and D. Sloan have moved to dismiss the newly-added causes of action in the Fifth Amended Complaint, and have also filed an answer and counterclaim against Ryan for breach of contract and attorney's fees. *See* Def. Mot. to Dis., Orig. Ans., and Countercl., ECF No. 80. Ryan has moved to dismiss the counterclaim. *See* Pl. Mot. to Dis. Countercl., ECF No. 85. Defendant L. Sloan has moved to dismiss the Fifth Amended Complaint under Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction or, alternatively, for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and has moved for a protective order to stay discovery. *See* L. Sloan's Mot. to Dis. 5th Am. Compl., ECF No. 87; L. Sloan Mot. for Prot. Ord., ECF No. 98. All motions have been fully briefed and are ripe for adjudication.

## II.    Defendants' Motion to Dismiss the Newly-Added Causes of Action

Defendants Inspired and D. Sloan move to dismiss the following causes of action in the Fifth Amended Complaint – Count Six (negligence, negligence per se, and gross negligence); Count Seven (conversion); and Count 8 (conspiracy). In support, Inspired and D. Sloan argue that the economic loss rule bars Ryan's newly-added tort claims, as the alleged injuries suffered and losses complained of are the subject matter of the contract between the parties. *See* Def. Mot. to Dis. at 1-2; Def. Reply at 9. Alternatively, Inspired and D. Sloan argue that Ryan has failed to satisfy federal pleading standards. *See* Def. Mot. to Dis. at 2, 5-6. In response, Ryan argues that the economic loss rule does not apply, since its losses "go above and beyond damages for breach of the Marketing Agreement and Defendants' complete lack of reasonable conduct and care are in the nature of tort

10

rather than merely breach of contract[,]" and that it has satisfied the pleading standards.  Ryan Resp.

to Mot. to Dis. at 11.

A.      *Standard for Dismissal under Rule 12(b)(6)*

Federal Rule of Civil Procedure 8(a) requires a plaintiff's pleading to include "a short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it

demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  If

a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims

under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may

be granted."  Fed. R. Civ. P. 12(b)(6).

To defeat a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts

that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility

and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the

complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm*

*Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).  The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief.  *Id.* at 678–79.

> B.     Analysis

The Court turns first to Inspired's and D. Sloan's argument that Ryan's newly-added causes of action are barred by the economic loss rule.

Texas law "prohibit[s] tort claims if the parties' relationship and attendant duties arise from a contract."  *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 625 (N.D. Tex 2011) (Means, J.); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 493-95 (Tex. 1991) (holding that plaintiff cannot recover under tort law '[w]hen the only loss or damage is the subject matter of the contract").  In *DeLanney*, the Supreme Court of Texas considered "whether a cause of action for negligence is stated by an allegation that a telephone company negligently failed to perform its contract to publish a Yellow pages advertisement."  *DeLanney*, 809 S.W.2d at 493.  The court held that because the plaintiff "sought damages for breach of a duty created under the contract, rather than a duty imposed by law, the claim sounded only in contract."  *Id.*  The court explained its reasoning:

> If the defendants's conduct—such as negligently burning down a house—would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort.  Conversely, if the defendant's conduct—such as failing to publish an advertisement—would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.

*Id.* The court stated further: "[i]n determining whether the plaintiff may recover on a tort theory, it is also instructive to examine the nature of plaintiff's loss." *Id.* at 494. "When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." *Id*. In *Delanney*, the court also relied on the following generalizations to aid it in distinguishing between tort and contract liability:

> Prosser and Keeton suggest seven generalizations as helpful in distinguishing between tort and contract liability. Those which are useful in this case include: (1) obligations imposed by law are tort obligations; (2) **misfeasance or negligent affirmative conduct in the performance of a promise** generally subjects an actor to tort liability as well as contract liability for physical harm to persons and tangible things; (3) recovery of intangible economic losses is normally determined by contract law; and (4) there is no tort liability for nonfeasance, i.e., failing to do what one promised to do in the absence of a duty to act apart from the promise made.

*DeLanney*, 809 S.W.2d at 495 (citing with approval W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts § 92 at 656-57 (5th ed. 1984) (emphasis added)); *see also Riley v. Champion Int'l Corp.*, 973 F. Supp. 634, 643 and n.7 (E.D. Tex. 1997) (Schell, J.)(recognizing that cases in this "confusing and complex" area differentiate between "nonfeasance," resulting in liability under the contract, and "misfeasance," which produces tort liability).

Ryan asserts negligence-based claims against D. Sloan and Inspired for their alleged failure "to observe their duty to Ryan to act in a commercially reasonable and prudent manner by defaming Ryan and using money belonging to Ryan and its clients for their own personal gain." 5th Am. Compl. ¶ 47; *id.* ¶ 47 (Plaintiff injured by "Defendants [use of] the money which was to be segregated and paid to Ryan and its clients . . . ."). Referring to recent filings in the Divorce Action, Ryan asserts that "the funds have been misused and dissipated thereby impairing Ryan's and its client's recovery [and] Ryan should be allowed to recover the funds on alternative theories including

conversion, equitable relief, and negligence." Ryan Resp. to Mot. to Dis. at 12.[5]  Relying in part on a 1947 Texas Supreme Court case, Ryan posits that the economic loss rule does not apply since, "[a]ccompanying every contract is a duty to perform with care, skill, and reasonable expedience the thing agreed to be done; the negligent failure to observe any of these conditions is a tort as well as a breach of contract."  *See* Pl. Resp. at 9 (citing *Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508, 510 (Tex. 1947)).

Having considered the parties' arguments, case law, and pleadings, the Court concludes that Ryan has sufficiently alleged a tort based on "misfeasance" and "negligent affirmative conduct" such that the economic loss doctrine does not bar its negligence-based claims.  *See DeLanney*, 809 S.W.2d at 495 (citation omitted).  As alleged in the Fifth Amended Complaint and attached Exhibits, including Ex. D (Petition for Dissolution of Marriage) and Ex. E (Emergency Motion for Temporary Restraining Order and Temporary Relief), Defendants have dissipated the funds at issue on personal expenditures, even after D. Sloan agreed to fund a settlement account.  In her motion for temporary restraining order, L. Sloan swears that D. Sloan "has taken the funds of Inspired Development, LLC and used them for his own purpose such as gambling at casinos throughout the nation[]" and that D. Sloan consistently used money from Inspired accounts on personal purchases of a Porsche, expensive jewelry, houses and "paramours, gambling, investments in night clubs, movies, movie stars, and

---

[5]Ryan points out that the Court has already held that Ryan's other tort and equitable claims should not be dismissed.  *Id.* (citing Order, ECF No. 69, p. 11 (Money Had and Received), p. 12 (Unjust Enrichment), p. 12 (Restitution, Disgorgement, Imposition of Constructive Trust), pp. 13, 21 (Defamation), pp. 23-24 (Money Had and Received, Violation of TTLA, and Equitable Claims)).  The Court allowed these equitable claims to remain in the case recognizing the possibility that the "contract will not be considered valid and enforceable once all the evidence is gathered.  If the evidence shows that there is no valid agreement, Ryan should not be barred from bringing its [equitable claims] as an alternative theory of relief."  Order, ECF No. 69, p. 11.

cars." See Ex. E to 5th Am. Compl.  L. Sloan attaches documents to her motion for temporary restraining order evidencing payment in full for a Porsche in the amount of $107,573.85 by D. Sloan with the signature of Efina Levac, an alleged paramour/exotic dancer, with whom D. Sloan was having an adulterous affair.  *See id.*  Further, Ryan alleges that during this time, L. Sloan continued to accept payments from D. Sloan from the Inspired accounts belonging to Ryan and its clients.  5th Am. Comp. ¶ 24.   Only when D. Sloan no longer could access Inspired accounts and pay L. Sloan, did she move for injunctive relief in the Divorce Action, for the first time complaining about D. Sloan's actions.  *Id.*

These allegations of misfeasance and negligent affirmative conduct, and the alleged harm resulting from dissipation of funds, as well as injury to Ryan's client relations through alleged defamatory statements, is above and beyond breach of contract damages.[6]  Further, the Court agrees with Ryan that the *Groham* case relied upon by Inspired and D. Sloan to support application of the economic loss rule is distinguishable.  *See* Def. Mot. to Dis. Countercl. at 2 (citing *Groham v. Kahlig*, 318 S.W.3d 882, 889 (Tex. 2010)).   In *Groham*, Groham sued her ex-husband Kahlig for breach of a security agreement that was part of their divorce settlement.  *Groham*, 318 S.W.3d at 884.  Under the divorce agreement, Kahlig executed a promissory note and pledged a majority of his

---

[6]Defendants are correct that the "practical import" of the language used in *Scharrenbeck*, which Ryan cites, has been "restricted" by subsequent Texas decisions, though certainly not overruled.  *See* Def. Reply at 7 (citing *Prendes v. Select Portfolio Services, Inc.*, 2012 WL 6913511, at *7 (N.D. Tex. Dec. 28, 2012) (in turn quoting *Riley v. Champion Int'l Corp.*, 973 F. Supp. 634, 644 (E.D. Tex. 1997) ("Although the language used in *Scharrenbeck* could be broadly construed, the [Texas Supreme Court in *Delanney*] "severely restricted the practical import of *Scharrenbeck* by holding that if defendant's negligent conduct gives rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort;" but if it gives "rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.")(internal punctuation omitted)).   Even with this restriction, the misfeasance and negligent affirmative conduct alleged in the pleadings regarding personal use of the funds at issue sufficiently states a claim sounding in tort, and not just in contract.

stock in two corporations as collateral. *Id.* The security agreement provided that the collateral could not be transferred, disposed of or destroyed. *Id.* at 885. Kahlig thereafter converted the corporations into limited partnerships, for which Groham sued him for breach of contract, and for negligence, alleging Kahlig breached a duty not to injure her secured interest in collateral, and damages for that conversion. *Id.* at 886. The court held that the security agreement was never breached because the collateral was never transferred, disposed of, or destroyed but merely changed form. *Id.* at 888. The court further found that because Gorham's action was in contract alone, the trial court did not err in refusing to submit her negligence claim to the jury. *Id.* at 889. The Gorham case is distinguished on its facts. As stated by Ryan: "the alleged claims in *Groham* did not result in any damages as the collateral was not transferred and the security interest in that case was not impaired. That is, the monies at issue were not lost. Here [. . .] the funds have been misused and dissipated thereby impairing Ryan's and its clients' recovery." *See* Pl. Resp. at 12.

For these reasons, the Court concludes that the economic loss doctrine does not bar Ryan's claims for negligence, negligence per se, and gross negligence (Count 6), conversion (Count 7), and conspiracy (Count 8).

Further, the Court concludes that as to Counts Six through Eight, Ryan has plead "enough facts to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). The allegations in the Fifth Amended Complaint, as detailed fully above, have facial plausibility and allow the Court to draw the reasonable inference of negligence, gross negligence, negligence per se, conversion and conspiracy. Accordingly, the Court

rejects Inspired's and D. Sloan's alternate argument that dismissal of Counts Six, Seven and Eight is required for failure to state a claim.[7]

In sum, the Court denies Inspired's and D. Sloan's motion to dismiss Counts Six, Seven and Eight of Plaintiff's Fifth Amended Complaint.   The economic loss rule does not bar Ryan's negligence-based claims.  Further, Counts Six, Seven and Eight state a claim sufficient to withstand Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6).

## III.    Ryan's Motion to Dismiss Counterclaim

Ryan has filed a motion to dismiss Inspired's and D. Sloan's counterclaim for breach of contract and attorney's fees.  *See* Pl. Mot. to Dis. Countercl., ECF No. 85.  Prior to analyzing the merits of the motion, the Court summarizes the allegations in the counterclaim, accepting all well-pleaded facts in the counterclaim as true and viewing them in the light most favorable to Inspired and D. Sloan.  *See Sonnier*, 509 F.3d at 675.

### A.    The Counterclaim

In their counterclaim (*see* ECF No. 80), Counter-Plaintiffs allege Ryan failed to meet its express contractual obligations under the Marketing Agreement to honor its duty to avoid a conflict of interest in violation of Section 10 of the Marketing Agreement.  *See* Countercl. ¶¶ 97-99, 110, 112, 114-19.  Counter-Plaintiffs summarize the counterclaim as follows: "[T]he true essence of the counterclaims is that Plaintiff egregiously violated the conflict-of-interest provision by ceasing

---

[7]With regard to Inspired's and D. Sloan's argument in support of dismissal of Count 8 (conspiracy) that "Plaintiffs have failed to allege a single fact demonstrating a meeting of the minds[,]" *see* Def. Mot. to Dismiss at 6, the Court notes that an agreement to conspire "need not be formal, the understanding may be a tacit one[.]" *Wackman v. Rubsamen*, 602 F.3d 391, 409 (5th Cir. 2010) (citation omitted).  The allegations of conspiracy in the Fifth Amended Complaint, viewed a whole, sufficiently allege a course of conduct that satisfies the "meeting of the minds" notice pleading standard.  *See, e.g.*, 5th Am. Compl. ¶ 24.

lobbying efforts while recovering a significant sum - $50 million - through no-look refunds." Resp. to Ryan Mot. to Dis. Countercl. at 7.[8] Counter-Plaintiffs allege that Ryan spearheaded a legislative challenge to legislation unfavorable to Inspired's tax consulting business in 2003; when similarly unfavorable new legislation was proposed in 2011, Ryan again undertook responsibility for challenging the legislative proposal; Ryan failed to successfully lobby against the legislative proposal at the direction of Brint Ryan; and at or about the same time Ryan ceased lobbying efforts, Brint Ryan boasted about recovering $50 million through "no-look refunds" for its clients. *Id.* ¶¶ 105-108; *see also* Resp. to Ryan Mot. to Dis. Countercl. at 6 (summarizing allegations).

      B.     *Analysis*

      In support of its motion to dismiss the counterclaim, Ryan argues that the counterclaim must be dismissed because: (1) the breach of contract counterclaim is the subject of a release by the parties contained in a December 15, 2011 Termination Agreement; (2) no language in the Marketing Agreement supports a duty "to endlessly lobby against any and all tax-reform legislation, and thus, there cannot be any breach as a matter of law"; (3) any failure by Ryan to "single-handedly successfully defeat passage of tax-return legislation would be excused by impossibility of performance"; (4) any such requirement would be "unenforceable and void as a matter of public policy"; and (5) Counter-Plaintiffs' "threadbare 'breach of contract' allegations made 'on information and belief' are insufficient to survive a motion to dismiss." *See* Ryan Mot. to Dis. Countercl. at 1-2. Ryan also moves to dismiss Counter-Plaintiffs' claim for attorney's fees as a matter of law, since recovery of attorney's fees cannot be had absent breach of contract. *Id.* at 2.

---

[8]The counterclaim alleges that a "no-look refund" is "a sales tax refund provided by a state or local taxing authority without the full application of the authority's own policies and requirements or applicable law." Countercl. ¶ 108 (ECF No. 80).

In response, Inspired and D. Sloan argue that: (1) the Court cannot consider the December 2011 Termination Agreement since it is outside the pleadings, and even were the Court to consider it, the Termination Agreement does not operate as a release of the counterclaims; (2) the "true essence [of the counterclaim] is that [Ryan] egregiously violated the conflict-of-interest provision by ceasing lobbying efforts while recovering a significant sum – $50 million – through no-look refunds[,]" which states a cause of action for breach of the Marketing Agreement under Rule 8 and *Iqbal*; and (3) the counterclaim is not unenforceable as against public policy, nor excused based on impossibility of performance. *See* Resp. to Ryan Mot. to Dis. Countercl. at 3-7. The Court examines Ryan's arguments in support of dismissal in turn.

Ryan first urges the Court to consider a December 15, 2011 Termination Agreement that it attaches as an exhibit to its motion to dismiss, *see* Ex. A to Pl. Mot. to Dis. Countercl. ("Termination Agreement"), arguing that Counter-Plaintiffs' breach of contract claim is barred as a matter of law due to a release contained therein. *See* Ryan Mot. to Dis. Countercl. at 3. In opposition, Inspired and D. Sloan argue that the Court cannot consider the December 2011 Termination Agreement since it is outside the pleadings, and even were the Court to consider it, the Termination Agreement does not operate as a release of the counterclaims. Resp. to Ryan Mot. to Dis. Countercl. at 1-3. Further, Counter-Plaintiffs contend the Termination Agreement is not central to the counterclaims, and they do not stipulate to its authenticity. The Court agrees with Counter-Plaintiffs that it may not consider the Termination Agreement.

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir.

2011) (citations and internal quotation marks omitted).  When matters outside the pleadings are considered by a district court on a motion to dismiss, Rule 12(b) requires the court to treat the motion as one for summary judgment and to dispose of it as required by Rule 56.  *See* Fed.  R. Civ. P. 12(b); *Carter v. Stanton*, 405 U.S. 669, 671 (1972).  Although a district court may not consider matters "outside the pleadings," there is one limited exception.  A court may consider documents that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).  "Documents found outside of the complaint that are central to the plaintiff's claims, however, must also be **undisputed** to merit consideration by the Court." *Columbia Hosp. at Medical City Dallas Subsidiary, L.P. v. Legend Asset Mgmt. Corp.*, 2004 WL 769253, at *2 (N.D. Tex. April 9, 2004) (Fish, C.J.) (original emphasis) (citing *Brock v. Baskin-Robbins USA Co.*, 113 F. Supp. 2d 1078, 1092 (E.D. Tex. 2000) (stating that a court may consider "an undisputably authentic document" that a defendant attaches as an exhibit to a motion to dismiss)); *Holmes v. National Football League*, 939 F. Supp. 2d 517, 520 n.2 (N.D. Tex. 1996) (finding that document whose authenticity no party questions may be considered in ruling on a motion to dismiss).  "'Undisputed' in this context means that the authenticity of the document is not challenged." *Columbia Hosp.*, 2004 WL 769253, at *2 (quoting *Horsely v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).

In response to Ryan's motion to dismiss, Counter-Plaintiffs state: "Inspired does not stipulate to the authenticity of the Termination Agreement as attached to Plaintiff's Motion to Dismiss." *See* Resp. to Ryan Mot. to Dis. Countercl. at 3.  In reply, Ryan contends that this "frivolous objection to authenticity" should be ignored by the Court.  *See* Ryan Reply at 6.  According to Ryan: "A stipulation regarding authenticity is not required.  Rather the Court may rely on an 'undisputably'

authentic document . . . Here, the authenticity of the Termination Agreement is 'undisputably' authentic because Donald Sloan signed both the Amended Marketing Agreement and the Termination Agreement and the signatures are nearly identical[.]" *See id.* The Court disagrees, and determines that Counter-Plaintiffs have sufficiently challenged the authenticity of the Termination Agreement. *See, e.g., Walker v. DB3 Holdings, Inc.*, 2007 WL 3287128, at *1 n.2 (N.D. Tex. Nov. 6, 2007) (Fitzwater, J.) (refusing to apply limited exception for "undisputably authentic documents that a defendant attaches as an exhibit to a motion to dismiss" where "the authenticity of defendant's exhibit[] is challenged.").

In sum, as Counter-Plaintiffs have challenged the authenticity of the Termination Agreement, the Court cannot consider the release in the Termination Agreement in evaluating Ryan's motion to dismiss the counterclaim.

Next, Ryan argues that the counterclaim fails to state a claim for breach of the Marketing Agreement. The Court agrees. Amendment Number One, in addition to terminating Inspired's services under Section 2 of the Marketing Agreement, also deleted Section 6, which had provided that the parties "will not engage in any business that competes with [the Marketing Agreement] services[.]" 5th Am. Compl. ¶ 12, and Ex. B thereto (Amendment Number One to Marketing Agreement at 1-2, Secs. 1, 3). The parties also agreed that Amendment Number One "was to modify, and is hereby incorporated into" the Marketing Agreement. *See id.* at 1. Thus, the sole remaining provision upon which Counter-Plaintiffs can rely is Section 10, entitled "Conflicts of Interest" which places an affirmative duty on Ryan and Inspired to "refrain from any action during the Term of this Agreement which would conflict with or impair an unbiased performance of the

Services or other duties under this Agreement." *See* 5th Am. Compl and Ex. A thereto (Marketing Agreement).

In a nutshell, the breach of contract counterclaim alleges that Ryan breached the Marketing Agreement by failing to vigorously oppose tax reform legislation relating to a tax savings program among Inspired, Ryan and the City of Sachse, Texas.   Even taking all allegations as true, the counterclaim fails to state a plausible claim for relief under Section 10 of the Marketing Agreement sufficient to satisfy Rule 8 and *Iqbal*.   Ceasing lobbying efforts (assuming the Marketing Agreement even imposed a duty to lobby and continue lobbying), while allegedly recovering a $50 million through "no look refunds," does not state a plausible claim for relief that Ryan engaged in action "which would conflict with or impair an unbiased performance of the Services or other duties under this Agreement." *See* Marketing Agreement, Sec. 10.   *See generally Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556) ( "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Alternatively, the Court agrees with Ryan that any failure by Ryan to "single-handedly successfully defeat passage of tax-return legislation would be excused by impossibility of performance[.]" *See* Ryan Mot. to Dis. Countercl. at 6-7 (citing Restatement (Second) of Contracts § 266(1) (1981) (excusing defendant's performance if the contract is impossible to perform from the outset based on facts unknown to the defendant)). The Court also agrees with Ryan that even were it able to predict proposed tax reform legislation, there can be no contractual obligation to control state politics and constituencies seeking legislative changes.   *See id.* at 7 (citing *Centex Corp. v.*

*Dalton*, 840 S.W.2d 952, 954 (Tex. 1992) (defendant's contractual performance excused due to uncontrollable change in regulations)).

Further, a requirement to provide successful lobbying related to the 2011 proposed tax reform legislation would effectively limit governmental authority and would be "unenforceable and void as a matter of public policy[.]" *See City of Corpus Christi v. Taylor*, 126 S.W.3d 712, 719 (Tex. App.— Corpus Christi 2004, pet. dism'd) (contract provision limiting city's right to initiate condemnation proceedings was void against public policy because it affected city's free exercise of governmental authority)).

Counter-Plaintiff also sought attorney's fees based on Tex. Civ. Prac. & Rem Code § 38.001(8). Because the Court is dismissing the counterclaim for breach of contract, Counter-Plaintiffs cannot recover attorney's fees under section 38.001(8). *See Ashford Partners v. Eco. Res., Inc.*, 401 S.W.3d 35, 40-41 (Tex. 2012). In sum, pursuant to Fed. R. Civ. P. 12(b)(6), the Court grants Ryan's motion to dismiss the counterclaim asserted by Inspired and D. Sloan for breach of contract and the request for attorney's fees.

## IV.   L. Sloan's Motion to Dismiss and Motion for Protective Order

L. Sloan has moved to dismiss the Fifth Amended Complaint under Fed. R. Civ. P. 12(b)(2) arguing that the Court lacks personal jurisdiction over her or, alternatively, for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See* L. Sloan Mot. to Dis. She has also moved for a protective order to stay the deadline for her to respond to discovery propounded by Ryan on October 25, 2013 pending the Court's resolution of her motion to dismiss. *See* L. Sloan Mot. for Prot. Ord. The Court turns first to L. Sloan's motion to dismiss for lack of *in personam* jurisdiction.

### A.   Legal Standard for Dismissal under Rule 12(b)(2)

23

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of an action where the Court lacks personal jurisdiction over a defendant. On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction is proper, *id.*; proof by a preponderance of the evidence is not required. *International Truck and Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2)

24

whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest

in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Enviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp.2d 720, 725 (S.D. Tex. 1999) (*quoting Burger King*, 471 U.S. at 277). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (*quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)). The court must consider each of plaintiff's claims individually when determining whether specific jurisdiction over a defendant exists. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) ("A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.").

       B.      *Analysis*

       L. Sloan contends that Ryan has failed to establish a prima facie case for the Court's exercise of personal jurisdiction over her. She has submitted a Declaration in support stating that she is an Illinois resident, does not own property in Texas, has not traveled to Texas within the last ten years, does not have a Texas driver's license or a Texas telephone number, is not the CEO of Inspired, does not have a financial interest in any business in Texas, and since approximately 2003, has had little or no involvement with Inspired including little to no involvement with the management and the day-to-day operations of the company. Ex. A to L. Sloan Mot. to Dis. (Declar. of L. Sloan).

       In response, Ryan states that "L. Sloan has clearly committed intentional torts against Ryan, in her personal capacity, purposefully directed at Texas." *See* Ryan Resp. at 1-2. Relying on the

Fifth Amended Complaint and Exhibits from the Divorce Action attached to it, Ryan contends that "L. Sloan is subject to personal jurisdiction in Texas because with L. Sloan's cooperation, D. Sloan, as a principal and member of Inspired, committed the tort of defamation by making a false statement of fact to a representative of a company based in Texas during a phone call in which the third party was in Texas, and where the defamatory statement was targeted at Ryan, which has its principal place of business in Texas.  At the time he made the statement, L. Sloan was CEO of Inspired and had ultimate responsibility to supervise Inspired's representatives.  Instead she looked the other way so she could continue being personally paid." *Id.* at 5.  Relying on pleadings, Ryan asserts that L. Sloan accepted money from D. Sloan, "despite knowledge that D. Sloan was dissipating funds from Inspired accounts that were owned by Ryan and its clients" in breach of the Marketing Agreement. *Id.* at 6.  According to Ryan, "[t]he Sloans were, or should have been, aware that any harm to Ryan from a defamatory statement and breach of the Marketing Agreement would be felt by Ryan in Texas, and it was reasonably foreseeable that they would be haled into court in Texas as a result of such conduct." *Id.*  In opposition to L. Sloan's motion, Ryan argues that "this Court has specific jurisdiction over [L.Sloan] because the present case results from injuries that Ryan has sustained that arise out of or relate to L. Sloan's contacts with Texas.  Because L. Sloan is responsible for her own torts, the fiduciary shield does not apply." *Id.*

Ryan also contends that minimum contacts arise because "D. Sloan and Inspired, under the supervision of Inspired's CEO L. Sloan, signed a settlement agreement with Ryan that contained a Texas choice of law provision and venue provision in settlement of this action pending in Texas [and therefore the Sloans] purposefully availed themselves of the benefits and protections of the State of Texas by establishing minimum contacts with Texas[.]" *Id.* at 7.

27

Summing up its opposition, Ryan states that the "Court's assumption of jurisdiction over L. Sloan will be consistent with the constitutional requirements of due process because it is evident from L. Sloan's own verified pleadings and affidavit that she has derived great personal financial benefit from doing business with Ryan in Texas and has enjoyed the benefits of the laws of Texas." *Id.*

In its July 18, 2013 Order, the Court found that Ryan had stated a defamation claim against D. Sloan, recognizing that an employee "is personally liable for his own fraudulent or tortious acts, even when acting within the course and scope of his employment." ECF No. 69, Order at 21 (citing *Sanchez v. Mulvaney*, 274 S.W.3d 708, 712 (Tex. App.—San Antonio 2008, no pet.) (in turn citing *Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002)). In the amended pleadings, Ryan does not allege that L. Sloan made the alleged defamatory statement, but rather that D. Sloan made the statement, and that L. Sloan committed the tort of defamation by virtue of being CEO of Inspired. *See* 5th Am. Compl. ¶ 7 ("At the time [D. Sloan] made the [defamatory] statement, L. Sloan was CEO of Inspired and had ultimate responsibility to supervise Inspired representatives."); Ryan Resp. to L. Sloan Mot. to Dis. at 5 ("L. Sloan is subject to personal jurisdiction in Texas because with L. Sloan's cooperation, D. Sloan, as a principal and member of Inspired, committed the tort of defamation by making a false statement of fact to a representative of a company based in Texas during a phone call in which the third party was in Texas, and where the defamatory statement was targeted at Ryan which has its principal place of business in Texas.") Absent more, the Court will not impute D. Sloan's alleged defamatory statement to L. Sloan, or find purposeful availment based on the unilateral activities of D. Sloan directed at Texas. *See Burger King*, 471 U.S. at 475 (purposeful availment must be such that a defendant "should reasonably anticipate being haled into court" in the

forum state, ensuring that a defendant will not be haled into a jurisdiction based on the "unilateral activity of another party or a third person.") (citations and internal punctuation omitted).

Other than the claim for defamation, which is an intentional tort, Ryan's claims against L. Sloan arise from her role as the CEO of Inspired and/or arise from allegations that she received money through D. Sloan from Inspired. These allegations do not state a claim for specific tortious conduct committed by L. Sloan that were directed at the State of Texas such that she would anticipate being haled into court in the State of Texas. *See, e.g.*, 5th Am. Compl. ¶ 7 ("[F]or several years Inspired and Ryan received sales tax rebates pursuant to their Marketing Agreement, which was signed by L. Sloan on behalf of Inspired."); *id.* ("[O]n or about October 4, 2012, D. Sloan and Inspired, under the supervision of Inspired's CEO L. Sloan, signed a conditional settlement agreement with Ryan that contained a Texas choice of law provision[.]"). The Court agrees with L. Sloan's argument that "[t]hese allegations cannot be construed as Lisa Sloan acting in her personal capacity, and jurisdiction cannot be predicated on any contacts she may have had with Texas as a representative of Inspired." *See* L. Sloan Reply in Supp. of Mot. to Dis. at 4; *see generally Stuart*, 772 F.2d at 1197 ("an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has personal jurisdiction over the corporation[.]").

Further, to the extent Ryan points to L. Sloan's alleged acceptance of ill-gotten payments from her former husband D. Sloan as a source of minimum contacts with the State of Texas, as the Court has already stated, purposeful availment cannot be premised on "unilateral activity of another party or a third person." *See Burger King*, 471 U.S. at 475 (citations and internal punctuation omitted). Even were L. Sloan to foresee injury to Ryan by accepting these ill-gotten gains,

"[f]oreseeable injury alone is not sufficient to confer specific jurisdiction absent the direction of specific acts toward" the forum state. *See Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999).

In short, having considered L. Sloan's uncontroverted sworn declaration, the pleadings and legal arguments, the Court concludes that Ryan has failed to meet its burden of establishing a prima facie case for the Court's jurisdiction over nonresident Defendant L. Sloan. *See Ham*, 4 F.3d at 415; *Stuart*, 772 F.2d at 1192.[9] Ryan has failed to establish that L. Sloan had "minimum contacts" with the State of Texas, or that she "purposefully avail[ed] [herself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. Further, given the attenuated link between her accepting allegedly ill-gotten gains from ex-husband D. Sloan in Illinois and D. Sloan's alleged personal use of funds he had promised to segregate for eventual repayment to Ryan, it cannot be said that L. Sloan "should reasonably anticipate being haled into court" in Texas. *World-Wide Volkswagen*, 444 U.S. at 297; *see also Burger King*, 471 U.S. at 475 (citations omitted) (the test for minimum contacts "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'")

The Court further determines that it may not exercise general jurisdiction over L. Sloan. The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial.

---

[9]The Court notes that Ryan has not sought any continuances or requested that the Court allow limited discovery pertaining to jurisdictional facts underlying its claims against L. Sloan. While Ryan did propound discovery on L. Sloan on October 25, 2013 (which is the subject of L. Sloan's motion for protective order), Ryan does not argue that the Court should delay ruling on the pending dispositive motions while it conducts jurisdictional discovery.

*Helicopteros Nacionales*, 466 U.S. at 414 n. 9.  "Cases involving general jurisdiction suggest that the threshold contacts required for assertion of such jurisdiction are very substantial."  *Davis v. Billick*, 2002 WL 1398560, *3 (N.D. Tex. June 26, 2002) (citing *Helicopteros Nacionales*, 466 U.S. at 416-19); *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1362-63 (5th Cir. 1990); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 376 (5th Cir. 1987).  Based on L. Sloan's uncontroverted sworn declaration summarized above, the Court determines that there are no "continuous, systematic, and substantial" contacts required for a finding of general jurisdiction.

For the reasons stated above, the Court determines that it lacks *in personam* jurisdiction over L. Sloan, and accordingly grants L. Sloan's motion to dismiss.  In light of this ruling, the Court denies as moot L. Sloan's Motion for Protective Order.

## V.        Conclusion

Based on the foregoing, the Court: **denies** Defendants' Motion to Dismiss Fifth Amended Complaint (ECF No. 80); **grants** Plaintiff's Motion to Dismiss Counterclaims (ECF No. 85); **grants** Defendant Lisa K. Sloan's Motion to Dismiss Fifth Amended Complaint for lack of personal jurisdiction (ECF No. 87); and **denies as moot** Defendant Lisa K. Sloan's Motion for Protective Order (ECF No. 98).  Lisa K. Sloan is hereby **dismissed** from this case for lack of personal jurisdiction.  Inspired's and D. Sloan's counterclaims are hereby **dismissed with prejudice**.

**SO ORDERED** on this **25th day** of **November, 2013.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**